2439 83 Elaine Smith versus Miami Valley Hospital at all oral argument not to exceed 15 minutes per side miss Jackson you may proceed for the appellants good morning your honors and may it please the court Katherine Jackson on behalf of the appellants Miami Valley Hospital premier health partners and officer Trent Davis I'd respectfully request four minutes for bottling very well we're here today to discuss the threshold issue of qualified immunity qualified immunity should be decided at the earliest stages of litigation in our case we filed a motion for summary judgment the district court after after we filed a motion to stay discovery the district court denied that motion but failed to meet the requirements set forth by this court and Scousin v. Brighton and making specific findings that would be required in order to in order to permit further discovery at that point the district court expressly did not make a determination about the existence of or lack of existence of disputed genuine issue of material fact the district court also did not specifically address whether or not Irwin had sufficiently pled in his complaint constitutional violation and whether or not that violation whether or not Irwin's constitutional right existed on December 7th of 2022 at the time that officer Davis effectuated the arrest of mr. Irwin I would I would stay state at this point that this court first has jurisdiction to hear this appeal we're not raising any genuine issues of material fact despite what the appellees argument state within their brief this court can rely upon the complaint and the allegations contained in the complaint and in reliance upon Scott v. Harris this court can also rely upon the objective video evidence that both appellants and appellees have relied upon in their briefing for the facts and circumstances related to mr. Irwin's conduct that eventually led to it seems like you're getting you're putting a lot of weight on this video on this in the appeal but you barely mentioned it before the district court it seemed like it was like in a footnote maybe it would seem like you barely barely discussed it so the video is of great importance and the case Bomber v. Pontiac City discusses if on an interlocutory appeal for qualified immunity such as this the facts can be if the appellant concedes the plaintiffs version of facts which we're doing at this time with the complaint and the video the court has the ability to de novo review the entire record and the video is a part of the record and I think it's not something that should be discounted what are you saying that's in the video that's relevant here that that decides this are you saying the video decides the case basically I think the video is very instructive as far as a uncontroverted set of facts okay so what facts are depicted in the video that you say decide that there should be qualified immunity the video depicts there's about 16 minutes of relevant video time inside the hospital it shows mr. Irwin leaving going walking past what I would describe as like the the lobby area does it have any audio there's no audio and the video shows him walking outside sort of lingering in the lobby area he then needs to be escorted out because of a refusal to leave the plaintiff's complaint uses the word forced you can say forced escorted police presence is required in order for mr. Irwin to leave Miami Valley Hospital he then leaves exits you can see all this on the different video perspectives and he begins he's meandering around from a period of time before the ramp video shows him is there more than one video we're talking about here yes there's multiple different vantage points there's inside the hospital lobby that's a different camera that was doing the inside different camera and you can you can track it in chronological order and our merit brief specifically lays out the chronological order for ease of viewing so once he's outside and he's he's making his way down the emergency vehicle on ramp he's waddling at this point plaintiffs and their complaint can see that he relieved him out he was kind of waddling I mean he was walking sort of funny the whole time I know at some point took his pants down but does he have some kind of limitation on his ability to walk there's been nothing raised that he has a limitation on his ability to go from inside the hospital showing limitation on his ability to move around no he's he's scuffling about I think shuffling about inside but he's not waddling and there's there's actually three different sounds like walking shuffling sounds closer waddling than walking I think you have to look at the his apparel as well I think that's something that should be at no time inside is he wearing shoes he's also not in a hurry to leave that's apparent from the video resolves the issue of the amount of force that was used so that would be on the video that is described as ramp and it's about a minute into the video that it that begins the officer Davis effectuating the arrest starts to urinate and the officer see that they run on they tackle right so mr. Irwin is publicly urinating on the side of Miami Valley Hospital his per the DHHS report that the plaintiff appellee relies upon in their brief both in their motion in opposition to the state of discovery and in their appellee brief he has his pants down around his thighs at the point that he's making his way down the ramp officers observe him committing this fourth-degree misdemeanor and then you see his demeanor change from waddling to taking quick successive steps away so officers can tackle anyone who's committing a misdemeanor that's well I respectfully I believe it's not just committing a misdemeanor had he been standing there and committing the misdemeanor and then not begun to take he was not moving very fast and so very fast and it was not for very long I mean but time between starts moving they tackle him it's not that long I don't disagree with you on that I think that the video is instructive however on the distinctive change in his bodily conduct he is moving away and a suspect that is moving away under his pants down right so he's not gonna move that fast but he's someone might watch this and think it was fairly it was arguably excessive for a large officer to come and tackle this individual who was not moving quickly and not committed a felony well the grand factors are instructive on this and those factors go to whether or not the severity of the crime now I'll say this is a fourth-degree misdemeanor however he was also then charged with a second-degree misdemeanor for resisting arrest based upon pulling away moving away from law enforcement he wasn't immediately compliant the second factor is related to the threat the suspect poses at that time I would submit that mr. Irwin he was a threat to himself he's on an emergency vehicle on ramp that ambulances regularly take being it's not a place for pedestrians and he's making his way down that way he's committed a misdemeanor offense in front of law enforcement he was acting do we have those facts and the complaint and the video like we could I can see that it's the driveway I don't know that it's the ramp that the emergency vehicles use other than you telling me this here so it's argued within our briefs and it's and it's in the record viewable from the video you can see that if there's not a side the appellee has not contested the purpose of that ramp at this time and so I would state state that it is an emergency on ramp and I think that's plainly viewable from 30 dash to the record for the video how do you distinguish this case from van Pelt so in van Pelt which stands for it's this circuit states that tackling a putative suspect is reasonable in van Pelt it was a drug-related case the individual was pulled over for a legal window tint and then was subjected to a pat-down and then began to flee now he only flees for about four seconds according to the record in that case so it's a brief flight similar to in this case and I think it's important to also identify that flight it's the third grand factor is flee or attempt to flee and so even if this the fleeing wasn't a quick sprinting away I don't believe that that discounts the fact that mr. Irwin had committed an offense in front of law enforcement and then at a very minimum began to flee at that time so van Pelt is I think helpful for this court in making the determination that miss that officer Davis is entitled to qualified immunity at its core qualified immunity that the general question is was what the officer did it was it apparently unlawful and I don't think that there's a case that stands for the the premise that one singular tackle and that's all we're talking about here one singular tackle constitutes excessive force when when a misdemeanor is witnessed by law enforcement I think that's my time for now thank you thank you good morning morning please the court my name is Rob Kamenek I represent the plaintiff in the case let's start with van Pelt van Pelt was a case in which the person the suspect had already been arrested and the court noted the degree of force that was used with respect to the tackle and actually said that the tackle was more moderate than using a taser if you've already been arrested it seems like there's less reason to use to tackle someone than if you haven't been arrested agreed that's my position so there's like more of a more of a reason to tackle here because the person had not been arrested right he was running away having not been arrested well there's a lot of facts about whether he was running away if you look at the video at 106 and 107 and that's the ramp video he starts trotting before anybody gets near him in terms of officer Davis trying to track him down but the fact of the matter is when in van Pelt they talked about the degree of force used with respect to the tackle here again and there's I'll get to the jurisdictional issues in a moment here it is alleged in the complaint to go back to a comment made by judge Davis that the tackle was full bore that the tackle was officer Davis put his arms around my client when my client couldn't break his fall it's why my client fell on his head in his face resulting in permanent brain damage so you have a different degree of force being used van Pelt does not assist the defense here even if you were to find that there's no questions of fact but that's the biggest problem here I don't know how a court here goes ahead and finds that there's jurisdiction in these circumstances what fact do you say needs to be determined are facts that need to be determined that would be material that we cannot determine based upon the video well let's start with what Davis testified to that he knew whether the whether mr. Irwin was leaving the premises by way of consent or whether or not it was not by consent there's a difference of opinion in that the allegations here made by the defense in the motion how does that go to this excessiveness of force it well it goes to the motivation of Davis if Davis doesn't matter for the excessiveness analysis what the motivation of the officer is sure it does what what case do you have for that I don't have any case but the fact is isn't it an objective standard it's objective standard but a piece of what is motivation if he's an objective standard if he's chasing him down because he thought that he should not be leaving the hospital it's a different degree of force that may be used well isn't the maybe I'm misunderstanding the facts here I thought he was chasing him because he exposed himself and urinated on the hospital wall and had his pants down that's what he says how do we know we never even took his deposition well what why would we think that he was chasing him down because he didn't have consent to leave because my because the complaint has facts alleged that state and that's the only thing the only version of the facts that we've got is our complaint this was not a motion for due dismiss unfortunately they're trying to wedge a motion for summary judgment into a motion to dismiss but saying that our client didn't even want to leave and that they forced him out and at that point in time it officer Davis chased him down we don't know why officer Davis chased him down other than what he says in his affidavit okay well you just don't know you don't think you can look at the video and see what he's doing and use that as a basis for is the reason why I chased him down you can you can look at the video and see what he's doing yeah you know where you're a hundred yards away with the video and you've seen the ramp video that's the one that's relevant here and you can see actually what he did and and again are there questions of fact and whether or not he used excessive force the answer is all day long the matter of fact I just heard an argument to be made that the district court did not find a question in fact in the stay order and the district court found the questions of fact specifically in the stay order are there any other facts that you the consent issue is one you have any other facts that you want to develop through discovery that you think would be material here I'd like to know we'd like to know the background of officer Davis and whether or not he had prior incidents we asked for personnel records we asked for all sorts of information like that we didn't get any of that information and so what else we'd like to take a step to figure out if he's credible what are you saying his deposition wasn't even taken I mean I I'll ask the rhetoric question how often does this court see a qualified immunity motion for summary judgment made where the officers depositions never even taken so is it your position that the sometimes we even do this on 12 v6 it's rare but if the video shows enough then we'll do it yeah sometimes is it your position that I said never we said barely ever when I told you some you say sometimes so you agree sometimes so I just just I thought you're overstating I might have been overstating I'll say rarely how's that sometimes so it's your position as I understand it that the video is not clear enough to establish whether or not this tackling was excessive force or not and you have to have live testimony of witnesses involved in the encounter to make the final determination is that is that your position basically well yes because there is no audio when you look at the video there is a pedestrian on the left-hand side of the video there is a pedestrian in the bus stop I don't know if somebody heard something different if they can say I would have heard but I didn't hear any commands being given with respect you're under arrest all those are questions of and is it legally necessary for an officer to say you're under arrest before tackling someone who's committed a if he sees someone commit a crime and then the person's running away that you you say they have to say you're under arrest before they tackle them I didn't say that that's what I'm asking the no I didn't say that okay so they don't have no so why would audio be even relevant honor they are claiming that he was fleeing yes he's fleeing isn't that enough to go and tackle him legally without saying anything they were claiming he was fleeing because this is in Davis's affidavit because he said you're under arrest at that point in time they claim that my client quickened his pace and took off we don't even know if that statement was made because there's no audio they suppose they didn't say it and he was fleeing wouldn't that wouldn't they still have the right to tackle him given that they he just committed a appears to be a misdemeanor no they let's be clear from our perspective they don't have a right to tackle him at all why exactly do they have a right to tackle somebody who's being compliant well if he's running away he's not being compliant is he we did we just circled back to my point why is he running away they claim that he's running away it's not the question of why he's wondering it's the fact he is running away that's the point as I'm seeing it is that don't officers have the right to tackle a suspect who's running away having seen the suspect commit a crime he's your honor you you have the officer where you could maybe hear what he said and my client takes four steps okay he doesn't if the video shows that he doesn't look behind him until that point in time okay there's no audio at all somebody's running down after you even if they're barking commands and you turn around and you're startled and you don't think that you might start making a move those are all questions of fact those are all things that a jury can consider I know if somebody was well I won't I won't tell you what I would do because it's academic okay but that's all what we have the sequence here and quite frankly if our my clients started trotting at one point in time and again I'll give you the precise site because it may help ramp video at 105 and 106 okay my clients done with what he's halfway down the ramp and he starts trotting is he trying to make the light is he trying to get to the intersection in time you know there's a lot going on here excuse me no he doesn't absolutely not his pants are not down take a look at the video statement made was incorrect question sure are they around his waist are they all the way up you can't tell from that video what you can tell from the video is at the beginning when he's urinating is if I may I'm being demonstrative your honor his hands are down here okay then his hands come up I don't see any change in his pants thereafter so the statement made that his pants were down matter of fact that's contested in our complaint is he urinating do you even you can see his urinating looks like he was urinating yeah I do your name with your pants we can't ask him well what's in the record as to why he was in the hospital is there anything he was under observation he was picked up on the Dayton campus he was sleeping he was not responsive he was brought in in the early morning of the day in question I want to say around 5 a.m. your honor and then he was and it basically he was sleeping for a long period of time so he was under observation then he came out of it the sleep he apparently woke up they given him at a van which you know is an anti-anxiety drug okay and then they kept an eye on him and they claimed that at that point in time they thought that he could be discharged he disagrees the complaint says the opposite says that he wanted to stay there he wanted to stay under observation the complaint says that he had mental problems for lack of a better way to put it I want to circle back I'm sorry I didn't mean to interrupt but I wanted to circle back to something that you said about the point at which he looked back obviously we can all look at the video and I don't have an independent recollection sitting here but when is it that you said that he actually looked back as he was going down four seconds before if I don't think it's force that bear with me your honor I guess maybe I can pinpoint a little bit better it was it before or after he started to trot or run or however we want to say he picked up the pace about at the same time he only took like two steps to trot and then all of a sudden you've got at best he takes another four steps I don't even to take he takes that and that's an officer Davis attacks them to the ground that's what the video shows in terms of the time frames again you're a long way off in the video so you know you're trying to get the best view you can when you're a football field away so there's a threshold legal question we haven't talked about it all no jurisdiction there's no jurisdiction because they didn't file a motion to dismiss where they could say we're going to accept the allegations in the complaint that's factually true their motion for summary judgment did not assume are the facts mostly let me assume that they do assume excuse me okay your first argument is that they're resisting the facts so let me assume that let me just assume that they do take the favorite the version of the story most favorable to you then do we have jurisdiction I understand I'm alone but on a motion for summary no that you don't we didn't get any discovery well they asked to stay discovery so they have a right they have a right to to you know qualified immunity entails them a right to get the case resolved the earliest possible moment so it's a defense against litigation not not just liability so they asked judge Newman to stay and to rule on the summary judgment he denied the stay but did he rule on the summary judgment no he didn't rule on the summary judgment he doesn't have to say something about that or they say there's a material issue of fact you did in his order he said there's a there's a factual dispute he said I thought he said I'm taking great pains to not say whether there is or isn't no I bear with me your honor this is like the key issue that this is like the camera the main issue of the at least the first issue of the appeal well I agree that the jurisdictional question is the first issue but keep going down this line of disorder I thought was like a really critical line in light I'm looking at page ID eight nine eight in light of these differing versions of the events leading to and during mr. Irwin's arrest defendants are not entitled to a discovery stay instead plaintiff is entitled to discovery concerning mr. Irwin's conduct after he left Miami Valley Hospital and the method in force defendant Davis used to arrest the court makes no further findings no further findings concerning the scope of discovery and leaves it to counsel to do a joint defense plan and the judge adds the scope of discovery here is to resolve by way of inexpensively unjustly and expeditiously litigating the defendants motion for judge a summary judgment and he also states at the very bottom of the order he goes following this limited discovery I'll decide the motion right so he didn't decide the motion I agree he never decided the well that doesn't isn't that the whole point that when they the cases say that they move for discovery move for summary judge with the district court either has to decide the motion or say there's an issue of material fact and he says the court does not intend to find or even suggest that genuine issues of material fact do or do not exist I don't think the judge heat I don't think the judge made a ruling he didn't I mean that I understand that he thought there should be more discovery but he didn't rule he didn't say that there was a issue of yes I disagree that's exactly what I just read well what about the state where he says he's not finding he's not saying that there is or isn't an issue like one way to deny the motion for summary judgments to say there's an issue genuine issue material fact but he goes out of his way to say I'm not doing that it may answer the question I know my time yes he says that there's a factual dispute that must be resolved before he could rule on it and discovery is needed on it or I just read okay thank you thank you your honors I just have a few brief points to address the first of which is that notating differences in facts is not synonymous with finding a genuine issue of material fact and to adopt or put that into precedent would be to undo a century's worth of precedent regarding what the requirements are for summary judgment and this circuit has been very clear in Skousen regarding what a district court must find in order to grant discovery the stay of the denial of the stay of discovery resulted in holding qualified immunity in abeyance which it holding qualified and holding qualified immunity in abeyance is equal to a denial of qualified immunity and this this circuit has determined that to jump to a few other points the appellee relies upon officer Davis's affidavit at this juncture we do not we address that in our merit brief and again in our reply brief which is why we assert that this court has jurisdiction additionally related to the facts that appellee claims are of relevance whether why mr. Irwin is or is not fleeing that's not the determination for whether or not an officer acted reasonably what is going through the putative suspect suspects brain is of no relevance and whether he was startled or he was attempting to flee or trotting away as the appellee has described the fact of the matter is his behavior matches the definition of the of the word flee which I cite to in our reply brief that fleeing can equate to simply hastily withdrawing and I think at a minimum that's what mr. Irwin was doing was hastily withdrawing regarding any contention for whether mr. Irwin was publicly urinating or not I would advise this court to review the plaintiff's complaint which admits to him to mr. Irwin relieving himself on the side of the building regarding whether or not mr. Irwin's pants were down I would cite to a pally's brief page 17 for the record it's footnote 2 they rely upon the same DHHS report that I noted earlier to describe that mr. Irwin's pants were down to his mid thigh at that time and so I don't believe there's any dispute that he was publicly urinating he committed a fourth-degree misdemeanor he then began to hastily withdraw and trot away using the appellee's words thereby resisting arrest and officer Davis used reasonable force to effectual effectuate the arrest at that time the cases and I'll just briefly address this the cases that a pally relies upon Martin shoemake and Pelton are entirely distinguishable and Martin this court the holding was that both the tackling the use of three and then the holding of that individual down until he asphyxiated and died was excessive force that's not what happened here in Pelton that addressed an unreasonable investigate investigatory detention the officers showed up at the wrong house were investigating the wrong individual and then used force at that time the entire situation was deemed unreasonable our facts are able to be from that I don't believe there's any genuine issue of material fact this court has jurisdiction to determine this entire case and grant officer Davis qualified immunity and thereby dismiss all all the claims against Miami Valley Hospital and premier health partners thank you thank you counsel we'll take the matter under submission